UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

Case No. **21-20218-CR-SINGHAL**

UNITED STATES OF AMERICA

v.

VICTOR ANTONIO RIVERA-ORTIZ,

     **Defendant.**

                                /

**GOVERNMENT'S RESPONSE TO DEFENDANT'S MOTION FOR COMPASSIONATE RELEASE/SENTENCE REDUCTION PURSUANT TO 18 U.S.C. § 3582(c)(1)(A)**

*Pro* se Defendant Victor Antonio Rivera-Ortiz ("Defendant" or "Ortiz") moves this Court for compassionate release or sentence reduction pursuant to 18 U.S.C. § 3582(c)(1)(A) and the "family circumstances" provision under U.S.S.G. § 1B1.13(b)(3)(C). (DE 667). He claims that his excellent and extraordinary conduct while in prison, and necessary presence as the only available caregiver for his ailing mother warrant compassionate release. *Id.* at 10 ¶¶ 2, 5. However, Ortiz has not shown a right to relief considering (1) his reasons are not extraordinary and compelling; (2) he is not the only available caretaker for his mother; and (3) even assuming he met his burden, the 3553(a) factors independently preclude relief. *United States v. Giron*, 15 F.4th 1343 (11th Cir. 2021) (without satisfaction of the § 3553(a) factors, the Court need not reach a defendant's other arguments). Accordingly, the Court should deny the motion.

I.      **FACTUAL BACKGROUND AND PROCEDURAL HISTORY**

      a.  **The Offenses of Conviction**

On or about April 8, 2021, a federal grand jury sitting in Miami, Florida returned an indictment charging Ortiz with conspiring to distribute five kilograms or more of cocaine, in

violation of 21 U.S.C. §§ 846, 841(a)(1) and 841(b)(1)(A)(ii) (Count 8). (DE 3). On March 23, 2002, Ortiz pleaded guilty in a written plea agreement and factual proffer (DE 236, 237). Ortiz objected to the total offense level of 32, arguing for level 27. (PSI §§ 78-80). At sentencing, consistent with the parties' joint recommendation, the Court applied the § 2D1.1(b)(1) firearm enhancement. (DE 328, 579), and Ortiz was sentenced to 135 months' imprisonment. (DE 331).

### b.  Post-Conviction Proceedings

Ortiz previously filed for relief under 18 U.S.C. § 3582(c)(2) based on U.S.S.G. Amendment 821, effective November 1, 2023. (DE 580).  The United States agreed that Ortiz was eligible for a sentence reduction under the newly passed amendment because he received two "status points" under § 4A1.1(d) and had fewer criminal history points at his original sentencing (PSI §§ 85-88). (DE 585). Because Ortiz was sentenced on the low end of the advisory guideline range, a proportional sentence was 121 months' imprisonment. *Id.* at 2. The Court granted Ortiz's motion reducing his sentence from 135 months imprisonment to 121 months imprisonment followed by five years of supervised release. (DE 663).

Ortiz now moves for compassionate release pursuant to 18 U.S.C. § 3582(c)(1)(A) seizing on the amendment expanding the list of "extraordinary and compelling" circumstances to include "the incapacitation of the defendant's parents when the defendant would be the only caregiver for the parent." (DE  667). As shown below, Ortiz is not entitled to relief on the merits.

Ortiz is presently incarcerated at Coleman Medium FCI and has a projected release date of February 5, 2029.[1]

---

[1] *See* https://www.bop.gov/inmateloc/ (last visited April 1, 2026).

## I.   LEGAL STANDARDS

### a) *Pro se* Pleadings

*Pro se* pleadings are held to a less stringent standard and as such, are liberally construed. *United States v. Wright*, No. 24-11634, 2025 U.S. App. LEXIS 4722, at *5 (11th Cir. Feb. 28, 2025) (*quoting Tannenbaum v. United States*, 148 F.3d 1262, 1263 (11th Cir. 1998)). Nonetheless, the Court may not rewrite filings for *pro se* litigants. *See Benning v. Comm'r, Ga. Dep't of Corrs.*, 71 F.4th 1324, 1340 (11th Cir. 2023).

### b)  Section 3582

Under section 3582(c)(1)(A), Congress enacted a narrow exception to permit the courts to reduce a term of imprisonment (1) if the defendant demonstrates there are "extraordinary and compelling reasons" for a sentence reduction …; (2) the relief is consistent with the Commission's relevant policy statements in U.S.S.G. § 1B1.13 and the applicable 18 U.S.C. § 3553(a) factors; and (3) the defendant is not a danger to the safety of any other person or to the community as provided in 18 U.S.C. § 3142(g).[2]

Congress directed the Commission to "describe what should be considered extraordinary and compelling reasons." 28 U.S.C. § 994(t). On November 1, 2023, the Commission amended the policy statement to six categories that could constitute extraordinary and compelling reasons,

---

[2] Specifically, the 3553(a) factors include: "the nature and circumstances of the offense; the history and characteristics of the defendant; the need for the sentence imposed to reflect the seriousness of the offense, to promote respect for the law, to provide just punishment for the offense, to afford adequate deterrence to criminal conduct, and to protect the public from further crimes of the defendant." *United States v. Laureti*, 859 F. App'x 490, 491 (11th Cir. 2021).

The § 3142(g) factors are substantively duplicative of those in § 3553(a). The factors include, among others: (1) the nature and circumstances of the offense charged, including whether the offense is a crime of violence... (2) the weight of the evidence against the person; (3) the history and characteristics of the person..., [and] (4) the nature and seriousness of the danger to any person or the community that would be posed by the person's release... 18 U.S.C. § 3142(g).

of relevance here is category (3) regarding the "family circumstances of the defendant." U.S.S.G. § 1B1.13(b). Under subsection (b)(3)(C), extraordinary and compelling reasons may exist based on the "family circumstances of the defendant," where "the incapacitation of the defendant's parent when the defendant would be the only caregiver for the parent."

Notably, in this Circuit, courts may not reduce a sentence under Section 3582(c)(1)(A) unless a reduction would be consistent with § 1B1.13. *See United States v. Bryant*, 996 F.3d 1243, 1262 (11th Cir. 2021). The defendant bears the burden of establishing relief is warranted. *See United States v. Alonge*, No. 21-13566, 2022 WL 1135533 (11th Cir. Apr. 18, 2022) (per curiam). Further, in considering the § 3553(a) factors, a district court is not required "to articulate its findings and reasoning with great detail," but when it considers the § 3553(a) factors in the context of a motion under § 3582(c)(1)(A)(i), "it must ensure that the record reflects that it considered the applicable § 3553(a) factors." *United States v. Cook*, 998 F.3d 1180, 1185 (11th Cir. 2021).

## II.    ARGUMENT

The § 3582(c)(1)(A)(i) analysis requires the presence of all three compassionate-release conditions, "the absence of even one would foreclose a sentence reduction" *United States v. Moss*, No. 23-14055, 2024 WL 4647990 (11th Cir.  Nov. 1, 2024) (quoting *French v. Merrill*, 15 F.4th 116, 134–48 (1st Cir. 2021)). If the district court finds against the movant on any one of these requirements, it cannot grant relief, and need not analyze the other requirements. *Giron*, 15 F4th at 134-48; *Tinker*, 14 F.4th at 1237–38 (explaining that "nothing on the face of 18 U.S.C. § 3582(c)(1)(A) requires a court to conduct the compassionate release analysis in any particular order"). Here, while Diaz has not exhausted administrative remedies entitling him to judicial relief, he likewise fails to establish extraordinary and compelling reason for compassionate release and overcome the § 3553(a) inquiry.

**a) Diaz Has Not Exhausted Administrative Remedies**

To pursue judicial relief under § 3582, an inmate must first exhaust administrative remedies. *United States v. Harris*, 989 F.3d 908, 911 (11th Cir. 2021). To exhaust administrative remedies, a petitioner "must properly take each step within the administrative process" his prison facility has implemented. *Varner v. Shepard*, 11 F.4th 1252, 1260 (11th Cir. 2021); *see also Woodford v. Ngo*, 548 U.S. 81, 90, 126 S. Ct. 2378, 165 L. Ed. 2d 368 (2006) ("Administrative law does this by requiring proper exhaustion of administrative remedies, which 'means using all steps that the agency holds out and doing so properly (so that the agency addresses the issues on the merits).'" (quoting *Pozo v. McCaughtry*, 286 F.3d 1022, 1024 (7th Cir. 2002)).

Here, the Bureau of Prisons (BOP) records do not reflect that the Defendant has initiated the administrative remedy process, let alone exhausted it. (*See* Exh. A, "BOP Records"). The Defendant also fails to present evidence that he has exhausted the administrative remedy process. As such, he has failed to exhaust his administrative remedies before filing his motion for compassionate release.

**b) Diaz does not qualify for early release under § 1B1.13(b)(3)(C)**

Section 1B1.13(b)(3) (as amended effective Nov. 1, 2023) provides that "extraordinary and compelling reasons" exist where:

Family Circumstances of the Defendant.—

(A)   The death or incapacitation of the caregiver of the defendant's minor child or the defendant's child who is 18 years of age or older and incapable of self-care because of a mental or physical disability or a medical condition.

(B)   The incapacitation of the defendant's spouse or registered partner when the defendant would be the only available caregiver for the spouse or registered partner.

(C)     The incapacitation of the defendant's parent when the defendant would be the only available caregiver for the parent.

(D)     The defendant establishes that circumstances similar to those listed in paragraphs (3)(A) through (3)(C) exist involving any other immediate family member or an individual whose relationship with the defendant is similar in kind to that of an immediate family member, when the defendant would be the only available caregiver for such family member or individual. For purposes of this provision, "immediate family member" refers to any of the individuals listed in paragraphs (3)(A) through (3)(C) as well as a grandchild, grandparent, or sibling of the defendant.

Relying on subsection (3)(C), Ortiz claims that he is the only available caregiver for his ailing mother. However, as demonstrated below, he is not the only available caregiver and fails to address why no other family members (including his siblings and adult children), non-related caregivers, or government-provided assistance cannot meet his mother's needs. *See United States v. Robelo-Galo*, 166 F.4th 1311 (11th Cir. 2026) ("a finding of compassionate release cannot rest solely on avoiding such inconvenience for a convicted inmate's family.").

The defendant is originally from Puerto Rico, where his mother lives. (PSI ¶ 98; DE 667:13). He states that his mother is suffering from various pulmonary conditions requiring continuous oxygen and medications. (DE 667:10). In his motion, he includes medical documentation confirming his mother's health condition (*id.* at 12-19). He also includes a letter from his sister, Waleska, who is his mother's caregiver (i*d.* at 20). Waleska states that "at the moment i[t] has become nearly impossible to take care of [her] mom." *Id.* However, beyond this bare assertion, there is no meaningful justification, or evidence, as to why she can no longer serve as her mother's caregiver. Further, there is no evidence as to why the Defendant's second sister, Marta, who also lives in Puerto Rico, cannot assume care for his mother.

"Section 1B1.13(b)(3) operates as a policy of last resort: It authorizes a sentence reduction only when no other realistic caregiving option exists. The health of the family member, not the

wishes of the inmate or other potential caregivers, forms the relevant "extraordinary and compelling" justification for the inmate's release." *Robelo-Galo* at 1316. Here, the Defendant has 2 biological sisters in Puerto Rico and 4 other half siblings. (PSI ¶ 99, 100). He also has two adult-aged children in Puerto Rico. (PSI ¶ 103). Further, his mother's medical records include a "Certification of Hospice Services" from Quality Care Hospice dated July 24, 2025. (DE 667:18). It is clear is that the Defendant is not the "only available caregiver," and there are alternative caregivers.

In *Robelo-Galo*, the Eleventh Circuit Court of Appeals answered a question of first impression on what it means for an inmate to be the "only available caregiver" for a family member under U.S.S.G. § 1B1.13(b)(3). The Court held that to establish eligibility for release, an inmate must establish that no other person is qualified and free to provide the needed care. *Id.* Here, the Defendant fails to make such a showing, and inconvenience to other potential caretakers (like his sisters) is not sufficient. *See United States v. Michel*, No. 23-CR-20349-RAR, 2025 WL 786284, at *4 (S.D. Fla. Mar. 12, 2025) (Ruiz II, J.) ("That these family members and friends must juggle the responsibilities of their lives along with taking care of Defendant's wife is not sufficient. 'To the contrary, loved ones are often adversely impacted by a family member's incarceration, and must make necessary and inconvenient life adjustments during that individual's incarceration. These often-unavoidable consequences, however, do not create extraordinary circumstances that would satisfy the requirements of'" § 1B1.13(b)(3).") (quoting *United States v. Gonzalez*, No. 17-CR-60223, 2021 WL 4066897, at *5 (S.D. Fla. Sept. 7, 2021)).

"An alternative caregiver is *qualified* if he has the capacity to provide the incapacitated person with the care that the person needs." *Robelo-Galo* at 1315. Further, "an alternative caregiver is *free* if no material constraint prevents him from providing care." *Id.* The Eleventh Circuit

identified a list of non-exhaustive factors that district courts should consider in assessing whether a potential caregiver is qualified and free, including whether there are any:

(1) legal barriers that prevent the potential caregiver from providing care such as immigration status or legal obligations (e.g., military enlistment);
(2) physical or logistical barriers such as geographic distance or relocation;
(3) knowledge or capability-based barriers affect the caregiver's qualifications such as language barriers or specialized medical skills;
(4) family dynamics or relationship history considerations such a history of abuse, estrangement, or absence; and
(5) economic, financial, employment-related barriers that would impact a caregiver's availability.  *Id.*

Here, the Defendant is currently serving a reduced 121-month sentence with a projected release date of February 5, 2029. As he is constrained by his own legal obligations, he is not available and "free" to provide care. Therefore, he does not satisfy the first factor. "When an inmate's family member needs a caregiver, we should expect that another person who is qualified and free to provide care will take on the role, instead of releasing the inmate." *Id.* at 1316. On the contrary, Waleska is not only his mother's current caregiver, but also her "patient representative" and payor as listed on her medical forms (DE 667:18). While the Defendant has obvious legal barriers that prevent him from being a potential caregiver, there is no evidence of such legal barriers for his sisters or other any other alternative caregivers.

Second, the Defendant is housed in Florida, where he resided and worked prior to his incarceration. Although his mother and Waleska previously resided in Florida at the time of his prosecution (PSI ¶¶ 98-99), they now live in Puerto Rico. (PSI ¶ 98; DE 667:20). While the Eleventh Circuit did not adopt a bight-line geographical rule, it held that the factfinder should consider the feasibility and burdens of relocation. *Id.* at 1316. Here, if released, the Defendant would need to relocate to Puerto Rico and find employment, which are significant barriers before reaching the question of whether he qualifies as his mother's caregiver. Such an alternative is not

feasible and imposes a high burden upon the Defendant. On the other hand, both Waleska and Marta already reside in Puerto Rico and are established in their communities thereby removing any physical or logistical barriers.

Third, as a potential caregiver, the Defendant would need to learn specialized medical skills to take care of his mother, which inhibits him being a "qualified" caregiver. As the medical documents show, the Defendant's mother is diagnosed with congestive heart failure and chronic pulmonary disease (DE 667:19). She relies on medical equipment such an oxygen tank (DE 667:10,13) and is administered multiple medications (DE 667:17). The Defendant does not possess these specialized medical skills. By contrast, the alternative caregiver, Marta, is a schoolteacher, and the mother's current caregiver, Waleska, is a nurse. (PSI ¶¶ 97, 99).

Fourth, the Court should consider family dynamics or relationship history considerations such a history of abuse, estrangement, or absence. Here, the Defendant was raised by his mother. (PSI ¶¶ 98, 101). Due to his incarceration, there have been periods of absence or estrangement. However, what is critical here is the Defendant's adult criminal history because it is replete with domestic abuse, including verbal abuse, assault, choking, hitting, etc. (PSI ¶¶ 97, 99, 103). Such history eliminates the prospect of the Defendant as a caregiver. Alternatively, Waleska currently cares for the Defendant's mother, and Marta is an available caregiver.

Fifth, there are significant economic, financial, and employment-related barriers that would impact the Defendant. As mentioned, in order to become a potential caregiver, the Defendant would need to relocate to Puerto Rico, find a home and employment, which may necessitate education or training, and acquire specialized training or medical skills to properly care for his mother. There are no such barriers for his sisters. "By contrast, evidence that a family member or

friend has previously cared for the incapacitated person supports a finding that the family member or friend is available." *Id.* at 1317. Such a finding is present here.

Beyond a bare assertion, there is no evidence as to the current caregiver's unavailability or why Marta, as an alternative caregiver, cannot assume his mother's care necessitating his release from prison. There is also no evidence as to why many of the Defendant's many relatives who reside in Puerto Rico (e.g., his adult children) cannot assume his mother's care, or that of any non-related caregivers, Quality Care Hospice (DE 667:18), or government-provided assistance cannot meet his mother's needs. It is, however, clear that the Defendant is not the "only available caregiver." It would also be remiss to not remind the Court that while on supervised release, Defendant imported and distributed drugs from Puerto Rico where he is now asking the Court to allow him to return as a caregiver. (DE 237-1). The Defendant is not the "only available caregiver." To conclude, the Defendant fails to show extraordinary or compelling circumstances under the "family circumstances" provision under U.S.S.G. § 1B1.13(b)(3)(C).

### c) The § 3553(a) Factors Disfavor Release

Even if one of the of the extraordinary and compelling reasons enumerated in section 1B1.13 is present, which is not here, the Court must still determine that early release remains consistent with the factors set forth in section 3553(a) to the extent that they are applicable before a sentence reduction is proper. *United States v. Chineag*, No. 1:01-CR-00607-Ruiz, DE 255:4 (S.D.Fla. Feb. 6, 2025). "The section 3553(a) inquiry is separate from 3582(c)(1)(A). *See Dillon v. United States*, 560 U.S. 817, 826–27, 130 S. Ct. 2683, 177 L. Ed. 2d 271 (2010) (nothing that a court must first determine whether a sentence reduction is consistent with the Commission's policy statements before evaluating whether the reduction is warranted under § 3553(a)). While analyzing eligibility under § 3582(c)(1)(A) requires that courts assess whether a defendant qualifies under

the terms of the sentence reduction statute, § 3553(a) allows courts to determine *in their discretion* whether "the authorized reduction is warranted, either in whole or in part, according to the factors set forth in § 3553(a). *Bryant*, 996 F.3d at 1251 (quoting *Dillon*, 560 U.S. at 826–27) (emphasis added)." "A district [court] may 'skip' the consideration of one condition by assuming its existence and deny relief if it finds that 'at least one of the compassionate-release conditions was not satisfied.'" *Tinker*, 14 F.4th at 1236–37).

A sentence reduction in this case would seriously undermine community safety based on the seriousness of the Defendant's crimes and the factors set forth in 18 U.S.C. §§ 3142(g) and 3553(a). Here, the Defendant was trafficking drugs from Puerto Rico to Florida and committed the offense while on supervised release. (DE 325:27). He also has a history of firearms and drug trafficking (crack, cocaine, marijuana) as a DTO member. (DE 325:26). Moreover, the Defendant possesses a disciplinary history with many incidents such as making threats to others and possession of contraband secreted in a false compartment. (*See* "Exh. A" Inmate Discipline Data).

Last, the Defendant has only served less than half of his sentence (*id.*), including his recent sentence reduction based on Amendment 821. (DE 663). His time remaining is necessary to provide just punishment and protect the public. Compassionate release would not reflect the seriousness of his offense, promote respect for the law, provide just punishment, or afford adequate deterrence to criminal conduct. Upon consideration of the 18 U.S.C § 3553(a) factors, including the fact that the Defendant has not shown that he is only available caregiver for his mother, his motion fails.

**WHEREFORE**, the United States respectfully submits that the Defendant's motion be denied.

Respectfully submitted,

JASON A. REDING QUIÑONES
UNITED STATES ATTORNEY

By:     /s/ Ilana Malkin
        ILANA R. MALKIN
        Assistant United States Attorney
        Court ID No. A5503170
        U.S. Attorney's Office
        11200 NW 20th Street, Suite 101
        Miami, FL 33172
        Tel: (305) 715-7648
        Ilana.Malkin@usdoj.gov

## CERTIFICATE OF SERVICE

**I HEREBY CERTIFY** that on April 14, 2026, I electronically filed the foregoing document with the Clerk of the Court using CM/ECF and also served a copy of the foregoing document via U.S. Mail on the following:

**Victor Diaz**, *pro se*
Reg No.: 58866-018
Coleman Medium FCI
P.O. Box 1032
Coleman, FL 33521-1032

                                        /s/ Ilana Malkin
                                        Illana Malkin
                                        Assistant United States Attorney